Our next case this morning is Michael Conant v. Frederick Peters, O.N. Equity Sales Company and Fred Peters Financial Group, arguing for a felon. Michael Conant is Jordan Finker. For Appley, O.N. Equity is Daniel Nolan. And for Appley, Frederick Peters is Jerry Stevens. This is case number 5-24-0003. Is the counsel ready to proceed? Mr. Finker? All right. You may proceed. Good morning, Your Honors. Good morning. May it please the Court, my name is Jordan Finker and I am counsel for the plaintiff, Michael Conant, as trustee of the Jett & Conant Trust. We are here before you this morning to seek reversal of the Circuit Court's dismissal of counts 1 and 5 of the complaint as against the Peters defendants and count 2 against Onesko, all three arising out of breaches of fiduciary duty. The discovery rule was first recognized in our state in 1969 by the Supreme Court in Rosney v. Marneau, wherein it noted, where the passage of time does little to increase the problems of proof, the ends of justice are served by permitting the plaintiff to sue within the statutory period computed for the time at which he knew or should have known of the existence of the right to sue. Since the Court's holding in 1969, the discovery rule has been applied to serve the ends of justice time and time again, evolving into the rule we know today, which requires a determination of a factual issue, which is when a plaintiff knew or reasonably should have known about their injury and that it was wrongfully caused. Knew or reasonably should have known about their injury and that it was wrongfully caused. The spirit within which the discovery rule was born remains alive and well today, that a scheme to do harm, well done, may go undetected beyond the otherwise applicable statute of limitations, and the would-be wrongdoer should not benefit from succeeding in keeping his or her bad acts unknown. Here, Peters and the brokerage firms he worked for engaged in a practice known as churning, selling securities or annuities at a loss not for the benefit of the customer, in this case the trust, but for the benefit of themselves to earn higher commissions without regard to the folks that they represented. Both Peters and Nesko take a narrow view of this, that David should have known the trust was incurring early surrender fees because, as the Peters defendants argued, he incurred them. This narrow view misses the point entirely. Incurred them how? There are no allegations that Peters disclosed the early surrender fees to David, or the then-trustee, or that they showed up on a trust balance sheet, or that David had to write a check to cover those fees. In fact, it is just the opposite. The well-planned allegations of the complaint demonstrate that Peter hid these fees, informing David only that the premature sales of the securities annuities would permit the trust to earn higher returnals, never mentioning early surrender fees, lost opportunity costs, or commissions to Peters. Worse yet, the defendants ignore entirely that David did not know what Peters continued to represent him was false, that well after the point of sale, that his churning strategy was not undertaken to provide the trust with higher returns, but to enrich himself. The allegations of the complaint make it abundantly clear that David did not know of Peters' true intent until his nephew, the current trustee, Michael, was forced to seek third-party advice from other investment professionals. And it was those investment professionals that told him what Peters was doing was wrong. It was at that time, in 2022, that David and Michael learned not only of the injury, but that it was wrongfully caused. And wrongfully caused is an important component of the application of the discovery rule, something that the defendants glossed over in their briefs. The facts of our case are no different than Rosqueda v. Waterstone Financial Group, where the defendant investment professionals continued to misrepresent the soundness of an investment strategy to the plaintiffs, who were lured into a false sense of confidence only to be undone when they, too, were forced to seek the advice of other professionals. And most professionals told them that what the defendants had been doing was wrong. It is no different than Butler v. Mayor Brown and Platt, where the plaintiff, despite losing its lawsuit, the injury, did not know that his counsel had committed malpractice by not timely seeking to amend its complaint or hire a qualified expert. They did not know that the injury was wrongfully caused until the plaintiff hired another lawyer who informed him of such. It is no different than Kirby v. Jarrett, where the plaintiff did not know that she had had a perforated uterus until she went to a professional who performed exploratory surgery and told her that she had a perforated uterus. Peters suggests that the trustee here has drawn a false parallel to Rosqueda's, as one where the only connection was a failure to explain paperwork. But that is not what the plaintiff here has argued, nor the parallels between the cases. Peters, like Rosqueda's defendants, lied about an investment strategy, not just at the point of sale or in the presentation of paperwork, but throughout, as in our case, the 19-year engagement. Peters had his mark and David, the then trustee. The following Peters logic is underscored by its reliance on PSI Resources v. MB Financial Bank, where the court found the statute of limitations was not told by the application of the discovery rule when the defendant bank deposited checks into the wrong checking account. The plaintiff argued it did not know of this until it offered an auditor to tell them that the checks had not been deposited. The circuit court in that case held, and the appellate court affirmed, that the plaintiff should have and could have learned that the checks had not been deposited by looking at its bank statements. Of course, this is obvious. But here, there were no bank statements that showed Peters' 19-year investment strategy was born out of greed. Even if David would have been shown the early surrender fees, of which there are no allegations, he still believed, as alleged, that the investment strategy was undertaken to increase the returns for the trust assets, no different than the plaintiffs in Rosqueda's, who may have known that they were paying interest on their home equity line of credit, but believed that where their money was invested would yield higher returns. But counsel, wasn't Mr. Conant given statements that he then later submitted to the court? There are no allegations in the complaint stating that. And in the response briefs filed by, I believe, the UNESCO defendants, they allude to that, but they don't properly attach that through a 191 affidavit, which we touched on in our briefs. Peters' reliance on seeking mortgage fees for real is equally illuminating. There, the bank failed to have a mortgagor, the bank plaintiff, failed to have a mortgagor of a property held in tenancy by the entirety, sign the mortgage, and claimed, the bank, brazenly, that they couldn't have known they were wrongfully harmed until the mortgagor asserted the defense that the mortgage was ineffective. Of course, this did not toll the statute of limitations. Nothing was hidden from the bank. They were not deceived. They knew, or certainly should have known as a financial institution, that the mortgage was ineffective all along. That case has no relation to the facts of this case and underscores the difference between when the discovery rule should be applied and when it should not. Moreover, in none of the cases relied upon by Peters or Inesco were the defendant's arguments premised on rejecting the well-played allegations of the complaint, which is what the defendants and the circuit court did here in contravention of 735 ILCS 5-2-619A5. In PSI, for example, it was clear that the plaintiff had access to its bank accounts, such that it could see the checks were not deposited. Likewise, in C, the bank did not allege it could not have known whom signed the mortgage. It publicly recorded a document. However, in our case, both the defendant's arguments and the court's ruling, the circuit court's ruling, were premised on rejecting what has been alleged. And in part, for emphasis, what the plaintiff alleged was that David, the then-trustee, had little experience with and a limited understanding of financial investments, and for this reason he engaged Peters to serve as an investment advisor for the trusts. Peters held himself out as an experienced financial advisor with 36 years in the financial securities industry. Because of Peters' expertise, David fully entrusted Peters to act in the financial interest of the trust and gave Peters full control to determine the appropriate financial investments for the trusts. It was also alleged that David informed Peters that he had limited experience with and little understanding of financial investments. We also allege that David informed Peters that he did not understand the financial investments that Peters selected for the trusts, did not understand that when the investments Peters selected were liquidated before maturity, that the trust would incur significant early surrender fees, and relied on Peters' representation that such strategy would allow the trust estate to yield higher returns. We allege that the Peters defendants continued to conceal the true nature of his investment strategy beyond the point of sale by assuring David that the investment strategy would earn good returns. In other words, David was lured into a false sense of confidence that despite surrendering nearly 20 percent of the trust value, that the trust assets would receive higher returns. And just as an example, shortly after David engaged Peters when Peters switched brokerage firms to Inesco, he sold the trust investment before maturity without even informing David, incurring nearly 3,000 in redemption fees, and directing those funds to be invested in the AMF balance fund, a diversified portfolio of stocks, not annuities. Peters and Inesco's arguments are premised on rejecting all of the above well-pled allegations, effectively arguing even though the trust has alleged David did not know about the early surrender fees, the commissions, the lost opportunity costs, and that the falsity of the representation that the trust would yield higher returns, that he should have known. That he should have known. Based on what? There was nothing in the complaint that could infer that David had any indication of Peters' greedy motives or the impact of saying. This is starkly different from the cases relied upon by the defendants where the allegations demonstrate clearly that the plaintiffs did know, in the cases relied upon by the defendants, and that those plaintiffs did not act quickly enough and endeavored creative arguments to save their lost claims. Peters, seemingly recognizing this shortcoming, makes a, I refer to him as a Hail Mary argument, that Peters cannot be held to account for his wrongdoing because the trustee cannot delegate investment authority to an investment advisor, except he can, pursuant to 760 ILCS 5.4-5.1 of the then effective Trust and Trustees Act, which has subsequently been replaced in 2020 with the Trust Act. Peters, in making this argument, relies upon Ingray-Hertzel, where at trial, the trial court found that the trustee, after selling their property for $15,000, did nothing for years to collect the money from that transaction, from the attorney who had handled the transaction. In the Hertzel case, the trustee endeavored to blame the attorney, who notably was not a party to the lawsuit. It was within that vein that the trial court found the trustee negligent for effectively and knowingly letting $15,000 leave the trust estate. Those facts have no bearing on the facts of our case. And furthermore, the Trust and Trustees Act permitted the then-trustee, Mr. Conant, to do what he had done, which is to delegate authority to an investment professional for the trust's investments. In other words, despite the numerous allegations where it is stated that David did not understand the financial strategies being employed by Peters and that he was churning the investments for his own benefit, the defendants and the circuit courts reject that and say, well, he should have. The circuit court. We are here because the circuit court committed reversible error in its orders, granting the motion to dismiss a circuit court that acknowledged on numerous occasions having difficulty grasping the issue in this dispute and who had promptly decided an issue of fact, stating blankly that the trustee had to know what was going on with the trusts. When? When did the trustee have to know? When Peters sold the annuities and incurred an early serendipity without disclosing it to David? When Peters lied and told David that his churning strategy would increase returns for the trust? Only when the facts are undisputed and when one conclusion can be reasonably drawn from the facts may a court decide a question of fact as a matter of law. Even assuming the allegations of the complaint so clearly established that David knew he was being taken advantage of, what is never answered by the circuit court or by the defendants, which highlights the issues with the circuit court's ruling, is that Peters engaged in many breaches and the circuit court nor the defendants have ever provided any indication as to when they believe David should have known or that he was wrongfully harmed. Because these allegations do not draw one conclusion, they do not point to a time when bank statements were received or an ineffective mortgage recorded, nor can they. And any attempt to do so would be deciding an issue of fact, committing reversible error. As such, Your Honors, we ask that you reverse the circuit court's orders granting the motions to dismiss. Thank you. Any questions of Justice Booey?  So we'll give you an opportunity for rebuttal in a moment. Thank you, Your Honor. Who's going first from the athletes? Your Honor, it seems I have two years of defense. All right. My understanding is you each have seven and a half minutes? Yes, sir. Just for clarification, when the light flashes yellow, you have two minutes. When it's solid yellow, you have one minute. Thank you. Good morning. Gary Stephens, Lincolns High School in Schwartzburg, on behalf of Fred Peters and the Fred Peters Financial Group. I just want to touch on one thing right up front, which is with respect to the statements of finance that were referred to by Your Honor which were filed with the Christian County Courthouse. I think both parties brought them up in their motions, and the argument is not that it was alleged that Mr. Conant received financial statements. The argument is that Mr. Conant, as the trustee to the trusts, had an indelible obligation to file statements of finance for each of the trusts with the Christian County Courthouse, and he did that. We know that because we can look at the public docket, which we referred the circuit court to, and assuming the court took judicial notice of those filings. And the other thing I just want to mention up front is that notwithstanding the eloquent arguments of my counterpart, there are actually no allegations in the complaint concerning what David Conant learned about the transactions after the transactions were effectuated. The complaint is actually drafted in a very savvy manner, and if you read it there are allegations concerning what Mr. Peters failed to convey to Mr. Conant at the points of sale, and allegedly why he failed to relay that information concerning the surrender charges and the commissions, et cetera. And then ultimately there are allegations concerning what Michael Conant learned about those transactions 20 years after the fact. So in pushing for appeal, or reversal rather, the economy is doing two different things that I think when you dive into it sort of undercuts their argument. The first is that they are reframing the allegations of the complaint, which unambiguously identifies the wrongs perpetrated by Mr. Peters as failures to disclose to Mr. Conant fees and penalties and commissions associated with various transactions over the past 20 years, standing back to 2003. Paragraph 145 of the complaint on C-30 of the record summarizes 19 affirmative misdeeds and purported failures by Mr. Peters constituting his breaches of fiduciary duty. All of them concern the collection of commissions and the failure to disclose fees, with the exception of one failure to obtain consent for a transaction that was actually effectuated back in 2004. So as I'll address momentarily, this is important because the lower court's dismissal of the complaint on statute of limitations grounds really rested on the fact that David Conant, in his capacity as trustee, should have known about these fees and charges, if not before they were imposed, which is how the complaint is drafted, but at some point after during his administration of his duties as trustee. But on appeal, Apollon is arguing that the actual wrong committed by Mr. Peters was this 20-year scheme to mislead Mr. Conant about the future performance of the trust's investments, that the trust could never have benefited because of these fees that were imposed. And again, with respect to misrepresentation of the future performance, that is distinguishable from the misrepresentations discussed in a case like Las Vegas, for example, where the actual investments were being the features of the investments and the features of the scheme were being blatantly misrepresented. For example, the terms of the annuity or the fact that the money would be 100 percent accessible after the fact. And in this instance, there are also no allegations of continued concealment by Mr. Peters concerning how the investments were actually performing. Even if you concede that David was aware of the charges, how do we know or how is it a question of fact that David should have known the charges were wrong? And doesn't that require an expert testimony to make that showing? Well, again, I think, and this kind of relates to, you know, the question of whether something is wrongly incurred or wrongly committed. You know, we point to the case of Nolan v. Johns Manville Asbestos. It is not a requirement under the discovery rule that a plaintiff know that they have a cause of action or that they understand another party's negligence or misrepresentation. What is required is that they know they're injured and they know the injury was wrongfully caused. Now, in this instance, if the allegations are that Mr. Conant or Mr. Peters did not inform Mr. Conant that he was going to infer charges or fees or commissions, and then Mr. Conant later learned that he was charged fees and commissions and surrendered charges, at that point he would have been on notice that he had been wronged, that he had been wrongfully misled about the terms of his investments. It does not require him to know that Mr. Peters has, you know, conducted negligence or fraud. It does not require him to know the actual terms of the legal cause of action that gets laid out against him or, as what Michael Conant later learned, that the investments would have been made differently, that they were unsuitable. But, again, isn't that a question of fact? Well, again, that would be if that was what was required. But as the complaint is laid out, Mr. Peters misrepresented the terms of the transactions, and as we contend, as he was duty-bound to do in his review of the accounts, Mr. Conant would have learned of those wrongs. It doesn't require him to understand that the investments were unsuitable, just that he was wronged, and that that is his notice to dig in further into what's going on with these investments. And he had 20 years to do that, and he did not. The only discovery that's alleged in this case is by Michael Conant, and that's, you know, one of the things that a claimant does in this instance is substitute the knowledge of the successor trustee for the original trustee. Doesn't that come down to a question, though, then, of how many fees are necessary before someone does know they've been wronged? Well, doesn't that require, again, expert testimony? Well, again, I don't believe it does because the allegation is that none of these fees were disclosed, and then they were incurred, and that is the wrong in and of itself. I don't think the court did not engage in, nor is it required to determine that the discovery rule doesn't apply, an in-depth factual analysis as to what level would have put Mr. Conant on notice. I mean, if he was told that there were no fees and no surrender charges and he got charged $20, that arguably would have put him on notice that he had been wronged and that the features of the investment were misrepresented to him. The claimant alleges or makes this argument because he needs to have continuing fraud and he needs to push the discovery period into the 2-year limitations period. Were the statements showing the fees part of the record? No. Your Honor, there were, again, the defendant's position is not that there were statements that Mr. Conant reviewed. The defendant's position is that Mr. Conant had an obligation to conduct a financial evaluation of the trust's assets, and we know he did so because he filed those statements of account with the court. And in doing so, it's the defendant's position that he should have learned that his trusts were charged fees and surcharges. Let me ask you. Sure. Does the case law suggest, though, that once there is a statute of limitations issue, that there's essentially a burden shifting? Is that correct? Yes. The case law suggests that once a viable argument for the imposition of the statute of limitations has been made, that it's plaintiff's obligation to show that the statute of limitations does not apply, pursuant to a rule like the discovery rule. So the plaintiff, then, has the burden of showing the discovery date. Is that correct? Is that what you're stating exactly? Yes. Looking at the complaint, you would have to be able to review the complaint and on the face of the complaint determine that there is an argument to be a factual evaluation to be made as to when the discovery occurred. Questions? I'm just so unclear and I'm not confused, which is easily to do. I hate getting into court. Was David Koenig given, during these transactions over the years, something that showed what the fees and the commissions and the penalties or whatnot, was that? Because I think you just said that that was not part of the record. Well, all we know is it was not alleged that he did not have access to that information. It was also not alleged that Mr. Peters was the gatekeeper of that information. Contrary to the suggestions by counsel, Mr. Peters was not in charge of the trust's finances. Mr. Peters was a financial advisor. He made recommendations as to how the trust could invest their accounts. Mr. Koenig actually executed each of these transactions, which is laid out in detail in the complaint. We did not put into the record any extraneous documents indicating that documentation or statements were filed. But we also know that there is no allegation that those documents or information was withheld or concealed from Mr. Koenig throughout the 20 years that he was responsible for monitoring the trust's finances. Thank you. Thank you. Mr. Nolan? Thank you. May I please support, counsel? My name is Dan Nolan. I represent the defendant, the O.N. Equity Sales Company. I'd like to start with just continuing from where you had left off with counsel for Peters. The law is the burden is on the plaintiff once the defendant asserts a statute of limitations defense to come forward with facts that, if alleged and true, would assert that they could not have learned that their injury was wrongfully caused within the statute of limitations. And that's really what we're dealing with here, is that plaintiff's complaint does not allege that they did not have these documents. Plaintiff actually alleges that part of their damages are these fees, and they're substantial. $25,000 or more is what they allege in the wherefore paragraph of the complaint. Let me stop you there. What is the timing of when they found out about those fees? Is that in the complaint? It is. So if we turn to … And that's alleged in their complaint as part of the record, correct? Yes, it is. So in the record, C21 to 23, paragraphs 74, 83, and 92, for example, they allege that they incurred these fees, but that Peters told them that it would increase … that incurring these fees would increase the account. So there's no allegation that they did not know of these fees at or near the time that the fees were incurred. What they're trying to allege essentially is some master investment plan that the plaintiff did not know about. But what's significant to that as well is that even when plaintiff alleges that they went to this new financial advisor in 2022, there's no allegation that they didn't have the statements for that advisor. There's no allegations that they needed more information or that advisor needed more information. There's no allegation that they requested more information and got it. The complaint essentially infers, and it's plaintiff's obligation to come forward with allegations otherwise, that they had these statements. So inquiry knowledge, right, is when they're on notice that they have damages. So 25,000 fees incurred between 2003 and 2012 when the last transaction involving my client, Onesco, was involved. That would put someone on inquiry notice, right? They're giving these reports to the … as the trustee to the probate court with regards to this trust. I don't think that's disputed. They gave the reports. What's in those reports is not part of the record. But the fact that they gave them at least annually, if not multiple reports each year, to the circuit court, to the probate court. And the fact that they gave the reports is in the record, not the actual report. That's correct. Okay. Those reports are confidential, and we are … but the record, it's in the record. C-209-210 is the record of the reports. Thank you. So going back again, the standard, as I think has been cited by this one, it's when a person knows or reasonably should know of an injury and also knows or reasonably should know that it was wrongfully caused. So the question that plaintiff's counsel raised earlier was, well, when was it wrongfully caused? Our position is at least as of April of 2012 or shortly thereafter, when they had these fees that they knew they had incurred over the years, and they had essentially the information because they don't realize they didn't as to the values of these accounts because they had to report it to the circuit court, that they did know or at least reasonably should have known that it was wrongfully caused, at least by their allegations. So they know they're being charged fees. I understand that. They know they're being charged fees, but how do they know the fees are wrongful until they have an expert witness or have somebody else look at those reports? Because they're … I'm sorry. I'm sorry. Because they're reporting to the court what these accounts are. So the trustee for these trusts, right, if you read the trust, it's talking about these are for supplemental medical expenses, supplemental living expenses, and this is for the life of the guardian. These reports are going to the guardian ad litem as well. So they need to know how much is in these accounts. What do we have access to? What do we need to spend? There are no allegations in the complaint about the values of these accounts. That's not on Onesco to prove the plaintiff suing Onesco 10 years, 11 years after the last transaction involving them. It's plaintiff's obligation to come forward with allegations that would show they couldn't have known. And other than just saying they didn't know, they have not alleged anything that says they couldn't have known. I did just want to point out, as I think is clear from the complaint, that the only allegations against Onesco are vicarious liability for Mr. Peters being a registered representative during a certain period. So for Onesco, we're really talking about 2004 to 2019. And again, the last transaction at all involving them was in 2012. There are no allegations of request for information to Onesco or that plaintiff didn't have these statements between that time. They had five, six, seven years to inquire about these accounts. And just lastly, as I think may have been mentioned by counsel for Peters, it's not – plaintiff does not have to know the full extent of their injuries or damages in order to put them on inquiry knowledge. Just knowing that they've been damaged is enough to put them on inquiry knowledge. It's enough to start the clock ticking. And if they – there's – so once they had these fees and they knew that they incurred $5,000 in fees for one transaction for surrendering it too early, they then had an obligation to inquire on that. And the fact that they had the statements sort of by omission, by not alleging that they didn't have them, they should have known, you know, well before 2022. And in this case, you know, two, three years at the most after the last transaction involving Onesco to trigger the statute of limitations. Thank you. Other questions, Justice Bui? Nope. Justice Schoen? No. Thank you.  Mr. Schoen, you have five minutes for rebuttal. Thank you, Your Honors. I think it bears repeating what I started off with. Well, can I interrupt you, though? Of course. Could you address the – we're limited time, so could you address the issue of this burden shifting, the fact that it's on the plaintiff to establish the date of discovery? Yes. Well, we've done that in the complaint. Okay. And when is that? So help me understand when you're alleging is the date of discovery. Yeah, so in paragraph 22 of the complaint, plaintiff alleges that it was only after Mr. Peter said he was going to continue to refuse to service the trust that Mr. Conant, both David and Michael, went to three other investment advisors to get their advice. And it was at that time that they were told that what Mr. Peters was doing was churning and wrong. But what about this notion, though, that he received the statements? There's something in the record that there were transactions, that he filed reports, and that he had some kind of knowledge in statements. We don't know to what extent those were, but what about the idea that he was put on notice? Yeah, so I think there's a couple things to point on that. First, what's in the record was not properly put into the record because it was attached to one of the briefs in the motion to dismiss without a 191 affidavit. Putting that aside, the fact that fees may have been incurred or that Mr. Conant knew that fees were being incurred doesn't indicate that they were wrongfully incurred, as Your Honors touched on. And then this goes right to the case of Rosqueda's. And the plaintiffs in that case knew that they had taken out 100% of the value of their home through a mortgage, knew that they were going to be incurring interest on that loan, but didn't know that that would be the harm, but didn't know that that was wrongfully incurred until someone said, hey, this investment strategy isn't sound, and you're not going to have earnings substantial enough to overcome the cost of the harm that you've taken on through the mortgage and the servicing of that debt. It's the same here. As we've alleged in the complaint, Mr. Conant, David, didn't know, assuming that he was aware of the fees, that the investment strategy was unsound. We allege that Mr. Peters told him that what he was doing by selling securities and investing in different annuities and selling annuities and investing in different securities was done to increase the value of the trust. And Mr. Conant trusted him. That's where the essence of the fiduciary duty arises. And so I think we've clearly established in the complaint when the plaintiffs learned that they had been wrongfully harmed, assuming even that they were aware that there were early surrender fees being incurred. The defendants also argued that just knowing that they'd been damaged is when the clock should start tolling. That is incorrect. And the case law on that is very clear. It's knowing of an injury and that injury was wrongfully harmed. And that's no different than the cases I cited earlier, the Lascedas case, which we've talked about in nauseam, the Mayor Brown case where a plaintiff had lost a lawsuit. That's the harm, but didn't know that that harm had been wrongfully incurred until another lawyer told them that his higher lawyers had committed malpractice. Or in the Kirby v. Jarrett case where a woman knew that she had pain and that was the harm but didn't know it had been wrongfully incurred until she went to another doctor who engaged in exploratory work and learned that she had a perforated uterus. These facts align with these cases. And I think the cases that the defendants have relied upon show a stark difference between the facts of our cases and the facts of our case and the facts where a court might say that the discovery rule doesn't apply, when it was obvious, or that they should have known based upon, you know, checks not showing up at a checking account or a mortgage not being properly signed. These differences, I think, are illuminating. With respect to some of the securities, there was a question about early surrender. Wasn't there some dispute about which party requested the early surrender? We've alleged that Mr. Peters told us to come in, that these were necessary to help increase the value of the trust and effectively told him where to sign. Does that address your question? I think so. Does that play a part in your burden shifting on the statute of limitations issue? Which party requested the early surrender? No, I don't. I'm sorry, can you ask that question again? Which party requested the early surrender, that dispute? Oh, I don't know if that bears on burden shifting in terms of establishing if the discovery rule is applicable. I think it goes to the underlying liability, which is that Mr. Peters was asking Mr. Conant to come in to do this to further his scheme of churning, and that Mr. Conant relied on Peters to believe that this strategy ultimately, while wrongful, which he learned in 2022, was done. Is it fair to say that your complaint is based on an allegation that Peters' strategy was defective as opposed to the amount of the fees? Yes, I suppose in theory, Mr. Peters, this could have been a good strategy if he was somehow taking these fees and there was some actual economic benefit to the early surrender fees. But we have now alleged that's the case, and in fact, the early surrender fees amount to about 30% of a trust, excuse me, 20% of a trust that was established to help a young man who had been tragically injured. Thank you. Any other questions? Thank you. Thank you, Your Honor. We appreciate your arguments. Consider the brief along with your arguments. We'll take the matter under advisement and issue a decision in due course.